# EXHIBIT A

August 31, 2018

Dear Mr. & Mrs. Watkins:

This letter is in regard to the District's continued provision of nursing services to K███ in connection with the management of his diabetes.

As you know, K███'s Diabetes Medical Management Order (DMMO) expires on September 5, 2018. In order to continue to provide services we need both of the following documents submitted before the start of the school day on September 5, 2018: (1) a signed Jordan School District Nursing Services Request for Special Health Care Services and Release of Confidential Information ("Nursing Services Form"); and (2) a current Diabetes Medical Management Order from K███'s physician.

K███ will be unable to attend school until both documents are signed and provided to us.

We have requested these materials on multiple prior occasions:

- On July 23, 2018 Sarah Roper, RN, emailed you requesting an updated DMMO;
- On July 27, 2018 Ms. Roper emailed you again requesting the DMMO and offered to request it directly from Primary Children's Medical Center;
  - o Mrs. Watkins responded that she would provide the DMMO;
- On July 30, 3018 Ms. Roper emailed you again about the DMMO;
- On August 9, 2018 Ms. Roper emailed you again about the DMMO;
  - o Mrs. Watkins responded that the DMMO is not ready yet;
- On August 15, 2018, Ms. Roper emailed you requesting that the DMMO be provided prior to the Health Care Plan meeting scheduled for August 17, 2018;
  - o No reply was received
- In the August 17, 2018 meeting regarding the Health Care Plan Mrs. Watkins stated that Dr. Murray was still working on the DMMO. Ms. Roper informed you that per Board policy, the old one could be used for 10 days, and that the new DMMO would be needed by September 5, 2018 in order to continue to administer medication at school;
- On August 27, 2018, Ms. Roper received an email from Dr. Murray stating that she would like the school and the parents to agree on a medical plan and that she would sign it;
- In an email you sent to Amanda Bollinger and others on August 28, 2018 you refused to sign the Nursing Services Form. You also placed a number of constraints on the ability of District/school nursing staff to speak with Dr. Murray.

You have asserted that signing the Nursing Services Form is voluntary. As you know, the form states:

Signing this release is voluntary. Refusing to sign it will not affect the school or district's commitment to provide a quality education for the student. *However, the requested records and permission to communicate with the student's licensed health care provider*

*may be required in order for the school to implement an appropriate plan of education, learning accommodations/modifications, and/or health care.*

The form also states:

I further understand that *health care services will not be provided by Jordan School District personnel prior to* the submission of a primary health care provider's statement, if requested, and *the development of a Health Care Plan by a Jordan School District nurse in conjunction with communication with the licensed health care provider*, as needed.

Given the extensive nature of K███'s diabetes management orders, appropriate health care services cannot be provided by the District absent effective two-way communication between the District and K███'s medical providers. You previously revoked that consent. The limitations you have attempted to place on those communications in connection with the signing of a new Nursing Services Form are not reasonable, do not allow the District to meet its professional obligations, and place an undue administrative burden on the District and its nursing staff.

The District is ready, willing, and able to fully accommodate K███'s disability and to provide nursing services to K███ at school upon submission of the requested information.

However, if we do not have a DMMO and a completed Nursing Services Form in hand by September 5, 2018, we will be unable to serve K███ at school. The alternative would be the provision of educational services at home pursuant to the District's Home & Hospital Program.

You have a right to address any disagreements with this decision through the District's 504 Grievance Procedures, a copy of which are enclosed.

Sincerely,

Nancy Ward

Educational Support Services

c:      504 Team

# EXHIBIT B

Subject:   Re: Medical Service and 504 Grievance Procedures

From:   powerstrokecaly@yahoo.com

To:   nancy.ward@jordandistrict.org

Cc:   fulvia.franco@jordandistrict.org; amanda.bollinger@jordandistrict.org; sarah.roper@jordandistrict.org;
kami.ridd@jordandistrict.org; drdarrellrobinson@gmail.com; mary.murray@hsc.utah.edu;
superintendent@jordandistrict.org; candie.checketts@jordandistrict.org; marlene.woolley@gmail.com;
georgia.montoya@ed.gov; april@aprilhollingsworthlaw.com

Bcc:   powerstrokecaly@yahoo.com; bridgetllewellyn@gmail.com; f.marcus551@gmail.com; coralee.moser@gmail.com;
wadewatkinsmps@gmail.com

Date:   Monday, September 3, 2018, 7:11:59 PM PDT

K███ will attend school September 5, 2018 and every day after, Wade and I will not jeopardize K███'s education.

Wade or myself will attend the entire school day to provide medical care for K███ and ensure his safety due to the fact
that Jordan School District refuses to to accommodate his disability, provide care, and violates his legal
rights. Applicable laws and codes are below for your convenience.
This process of parents caring for their child during school hours will continue until;
Jordan School District agrees the doctor recommended, safe, and appropriate accommodation regarding insulin
administration specifically for K███.
Allow K███ to carry supplies that pertain to his disability, according to Utah Code, which is stated in the DMMO.
Allow K███ to self-administer insulin, which is stated in the DMMO.
Honor Dr. Murray's letter stating K███'s required necessity for pre-filled insulin syringes.
Stop pressuring parents to sign the voluntary "Nursing Services form". Both Dr. Murray and parents are willing to
communicate with the school as long as the parents are directly involved in the conversation.
Complete an appropriate DMMO and renew an appropriate 504 Plan.

Constraints, absolutely. Wade and myself must protect K███ from the unprofessional behavior of staff members from
Jordan School District. As you are aware, there is a history of multiple events when staff contacted numerous resources
and discussed K███'s personal information in a manner that was not beneficial to K███. Each instance was against
parents consent. As, stated in his 504 Plan, parents would be contacted prior. Butterfield Canyon Elementary violated
K███'s 504 once again.

I have stated multiple times that we have been working with Dr. Murray since July 23, 2018 regarding K███'s DMMO.

Sarah Roper mentioned during the meeting on August 17, 2018 that after 10 days, the existing DMMO would no longer
be valid and medication could no longer be administered. Sarah Roper and Amanda Bollinger said nothing when I refused
to sign the "Nursing Services form" regarding K███ not being allowed to attend school. Neither Roper nor Bollinger
mentioned anything until the email Friday, August 31, 2018 that K███ would be discriminated against and no longer have
the legal right to attend public school.

Again, the laws and codes protecting K███'s right to attend public school are listed below. This type of harassment is
completely unacceptable.

In conclusion, Wade and I ask that the Jordan school district finally do the right and resolve this issue properly. Please
confirm, in writing, that K███ will be accomodated in the manner recommended by Dr. Murray and provided for in the
laws and codes. We would like nothing more than to move beyond this and have a positive school year.

Wade and Caly Watkins

Section 504 of the Rehabilitation Act of 1973 protects your child with diabetes from discrimination on the basis of
disability. This federal law, often known as "Section 504," prohibits programs that get federal funding from treating children
with disabilities—like diabetes—unfairly. It gives students with disabilities the right to the care they need to be safe and
fully participate in school and school activities. A disability under Section 504 is a "physical or mental impairment that

substantially limits one or more major life activities." Individuals with diabetes are considered to have a Section 504 disability because their endocrine system, a major life activity, is substantially limited.


The Americans with Disabilities Act2 (ADA) is a federal law that protects the child with a disability from discrimination in employment, government entities, and places of public accommodation, including schools.


State Laws, Regulations and Policies for School Diabetes Care
Federal law gives students the right to receive the diabetes care they need to be safe and participate in school activities just like any other child. Schools should provide the following:
• Trained staff to monitor blood glucose levels and administer insulin and glucagon • Trained staff to provide diabetes care during field trips, extracurricular events and all school-sponsored activities • Capable students permitted to self-manage their diabetes anytime, anywhere
Schools should not:
• Make family members go to school to care for a student's diabetes • Transfer students to a different school to get needed diabetes care • Prevent students with diabetes from participating in field trips, sports and other school-sponsored activities

Utah
About this information:
This information was prepared by the American Diabetes Association, a national leader in diabetes information and advocacy.
1. Does Utah allow school staff members who are not health care professionals to administer insulin?
Yes. Utah regulations specifically permit insulin administration to be delegated to unlicensed school personnel, as long as they follow the individual health plan (IHP):
[…] the delegation of nursing tasks in a school setting is further defined, clarified, or established as follows: […] (6) The routine provision of scheduled or correction dosage of insulin and the administration of glucagon in an emergency situation, as prescribed by the practitioner's order or specified in the IHP: (a) are not actions that require nursing assessment or judgment prior to administration; and(b) may be delegated to a delegatee. Insulin and glucagon injections by the delegatee shall only occur when the delegatee has followed the guidelines of the IHP. Utah Admin. Code R156-31b-701a.
2. Does Utah allow students to self-manage diabetes at school?
Yes. Utah law specifically allows students with diabetes to self-administer all types of diabetes care:
As used in this section, "diabetes medication" means prescription or nonprescription medication used to treat diabetes, including related medical devices, supplies, and equipment used to treat diabetes. (2) A public school shall permit a student to possess or possess and selfadminister diabetes medication if: (a) the student's parent or guardian signs a statement: (i) authorizing the student to possess or possess and self-administer diabetes medication; and […] (b) the student's health care provider provides a written statement that states: i) it is medically appropriate for the student to possess or possess and self-administer diabetes medication and the student should be in possession of diabetes medication at all times […]. Utah Code Ann. § 53A-11-604.
3. Does Utah allow students to carry diabetes supplies such as needles, insulin, and blood glucose testing devices?
Yes. As stated above, Utah specifically allows a health provider to authorize a student to have "possession of diabetes medication at all times." Utah Code Ann. § 53A-11-604(b). Federal Laws
Federal laws protect the rights of children with disabilities – such as diabetes. Students with diabetes have the right to enroll and participate in school, just like their classmates. This means they have the right to receive the diabetes care they need to be safe and have the same educational opportunities as students without diabetes have. There are several important federal laws that provide protections.
Section 504 of the Rehabilitation Act of 1973 (Section 504)
Section 504 of the Rehabilitation Act of 1973 (Section 504) provides important protections for students with diabetes attending public school or private and religious schools that receive
federal financial assistance. That is, it applies to the vast majority of students. Section 504 prohibits schools from treating children with disabilities—like diabetes—unfairly. It gives children with disabilities the right to the care they need to be safe and fully participate. Students do not need to have any problems with learning in order to be protected by Section 504. Covered schools are required to provide reasonable services and modifications that should be documented in a Section 504 Plan.
The best way to protect your child under this law is to put in place a Section 504 Plan. We encourage you to use our sample 504 Plans.
The Americans with Disabilities Act (ADA)
The Americans with Disabilities Act (ADA) is a federal law that prohibits discrimination against individuals with disabilities, including diabetes. It has provisions very similar to Section 504. It applies to public and private schools, preschools, child care centers, and camps except those run by religious institutions.
The Individuals with Disabilities Education Act (IDEA)
Under the Individuals with Disabilities with Education Act (IDEA), the federal government gives money to state and local education agencies to provide special education services to some children with certain disabilities. In order to get

services, the student's disability must harm his or her ability to learn. Some children with diabetes qualify for special education services under IDEA, especially if they have another disability, such as autism, or another learning disability. Some children may qualify on the basis of diabetes alone. Students who qualify will have an Individualized Education Program (IEP) that sets out what the school is going to do to meet the child's individual needs. Americans with Disabilities Act

What is the Americans with Disabilities Act?

The Americans with Disabilities Act (ADA) is a federal law that prohibits discrimination against qualified individuals with disabilities, including diabetes. The law also prohibits retaliation for asserting the right not to be discriminated against. The provisions of the ADA are substantially similar to those of Section 504 of the Rehabilitation Act of 1973.

Are students with diabetes covered by the ADA?

Yes. There is agreement that students with diabetes are covered under the ADA. Students are covered by the ADA if they have a disability, defined as a physical or mental impairment that substantially limits one or more major life activities. Major life activities include the functioning of major bodily systems such as the endocrine system. Diabetes, by its very definition, limits the

functioning of the endocrine system. In guidance, the Office for Civil Rights of the Department of Education states: While there are no per se disabilities under Section 504 and [the ADA], the nature of many impairments is such that, in virtually every case, a determination in favor of disability will be made. Thus, for example, a school district should not need or require extensive documentation or analysis to determine that a child with diabetes, epilepsy, bipolar disorder, or autism has a disability under Section 504 and [the ADA].

Which schools need to comply with the ADA?

All public schools must comply with Title II of the ADA. All private schools, except religious schools, must comply with Title III of the ADA.  (Religious schools that receive federal funding must comply with Section 504.)

What must schools covered by the ADA do to comply with the law?

The school must not discriminate against a child with a disability and is required to make reasonable changes in its practices and policies to avoid discrimination and to afford children with disabilities an equal opportunity to participate unless doing so would impose an "undue burden." Generally, schools will meet their obligations under the ADA by meeting their obligations under Section 504 of the Rehabilitation Act of 1973.


1/24/2018

53A-11-604 Diabetes medication -- Possession -- Self-administration.

(1) As used in this section, "diabetes medication" means prescription or nonprescription medication used to treat diabetes, including related medical devices, supplies, and equipment used to treat diabetes.

(2) A public school shall permit a student to possess or possess and self-administer diabetes medication if:

(a) the student's parent or guardian signs a statement:

(i) authorizing the student to possess or possess and self-administer diabetes medication; and

(ii) acknowledging that the student is responsible for, and capable of, possessing or possessing and self-administering the diabetes medication; and

(b) the student's health care provider provides a written statement that states:

(i) it is medically appropriate for the student to possess or possess and self-administer diabetes medication and the student should be in possession of diabetes medication at all times; and

(ii) the name of the diabetes medication prescribed or authorized for the student's use.

(3) The Utah Department of Health, in cooperation with the state superintendent of public instruction, shall design forms to be used by public schools for the parental and health care provider statements described in Subsection (2).

(4) Section 53A-11-904 does not apply to the possession and self-administration of diabetes medication in accordance with this section.


On Friday, August 31, 2018 06:24:19 PM PDT, Nancy Ward <nancy.ward@jordandistrict.org> wrote:


Dear Caly and Wade,

I am sending important information regarding medical service to K████ at school and our 504 Grievance Procedures. Please see the two attachments. I will send a hard copy of these two documents via U.S. mail, as well. Thank you.

--
*Nancy Ward*
*Educational Support*
*Jordan School District*
*801-567-8235*

*cc: Fulvia Franco, Amanda Bollinger, Sarah Roper, Kami Ridd*

 504 Grievance Procedure .pdf
488.7kB

 2018_08_31_KW Letter to Parent re Consent to Services.pdf
59.7kB

# EXHIBIT C

August 31, 2018

Dear Mr. & Mrs. Watkins:

This letter is in response to your request for an explanation from Jordan School District as to why your son K██ is not being permitted to carry syringes pre-filled with insulin at school in connection with the management of his diabetes.

As you know, the Office for Civil Rights has found that there was no violation of K██'s rights in connection with this decision.

As you also know, extensive discussion has taken place previously regarding this issue, including in the unsuccessful confidential mediation with the OCR mediator that was held prior to the issuance of the decision by OCR.

To reiterate, the District's position is as follows:

1. K██'s extensive 504 plan, pursuant to which he has a 1:1 nurse assigned to provide for his diabetes care, provides reasonable and effective medical care for K██ while he is at school and participating in school functions, including in emergency situations. K██ has full access to District programs and has been provided with a free appropriate public education as required by Section 504.

2. The District has not outright denied K██ the ability to carry pre-filled syringes. Rather, K██ is welcome to carry pre-filled syringes that are expressly designed for that purpose by the manufacturer, i.e, pharmaceutically labeled insulin pens. We believe this is a reasonable accommodation.

3. Other pre-filled syringes cannot be carried because:

    a. The insulin that you wish to pre-fill the syringes with is not approved for that use; manufacturer's instructions expressly state as follows: "NOVOLOG® should not be drawn into a syringe and stored for later use." Similarly, FDA guidelines regarding Novolog also state "Novolog should not be drawn into a syringe and stored for later use." To allow syringes to be pre-filled contrary to FDA and manufacturer's recommendations is outside of industry safety standards and therefore not consistent with the standard of care.

    b. The syringe manufacturer (Becton Dickinson) stated in response to an inquiry about the safety of pre-filling insulin in its syringes as follows: "In response to your inquiry on storing insulin in BD syringe; it is not recommended. In addition BD does not manufacture prefilled insulin syringes." Similarly, Sanofi, another insulin manufacturer has stated: "BD does not recommend that any of our syringes be prefilled more than a few minutes in advance of the injection. There are no conclusive studies to determine the safety or risks associated with this practice."

    c. The District is not required to, and will not, assume the risk associated with deviations from FDA guidance and manufacturer's instructions.

    d. Finally, the pre-filled syringes you have requested for K██ to carry lack the additional safety features of the approved pharmaceutically pre-filled insulin pens (and other

syringes commonly carried at school such as Epi-Pens) and pose an unacceptable risk of injury to K█████ or other students.

We understand that you disagree with this determination that has been made by the Butterfield Canyon 504 team in conjunction with JSD nurses and administrative staff. However, District administration has been fully briefed on this matter and fully supports the team's decision.

Finally, I have enclosed the 504 grievance procedures you requested. You are welcome to make use of them at any time.

Sincerely,


Dr. Anthony Godfrey

# **EXHIBIT D**

Utah Department of Health/Utah Office of Education

Licensed Independent Provider's (LIP)
Diabetes Medication/Management Orders
In Accordance with Utah Code 53A-11-603 and 53A-11-604
PCH Outpatient Diabetes Program
801-213-3599
Fax: 801-587-7539

Student Information
Patient First Name: K███
Patient Last Name: W███
Patient DOB: 03/03/2011
Type of DM: 1
Age at Dx: 17 months old
Name of School: Butterfield Canyon Elementary
School Fax:
For School Year: 2018-2019

**To Be Completed by LIP**
In accordance with these orders, an Individualized Health Care Plan (IHCP) must be developed by the School Nurse, Student, and Parent to be shared with appropriate school personnel, and cannot be shared with any individual outside of those public education employees without parental consent. As the student's LIP, I confirm the student has a diagnosis of diabetes mellitus and it is 'medically appropriate for the student to possess and self-administer diabetes medication and the student should be in possession of diabetes medications at all times'. K███ is allowed to self-manage his diabetes care and is allowed to carry and self-administer pre-filled insulin syringes. Per my assessment, I recommend: Student is capable to carbohydrate count meals and snacks for insulin adjustment, carry, and self-administer diabetes medication/insulin. This student may participate in school activities with the following restrictions: Blood glucose is below 80 prior to PE/Recess, glucose source may be required.

**PROCEDURES**
Emergency Glucagon Administration
Immediately for severe hypoglycemia: unconscious, semi-conscious (unable to control airway), or seizing.  Glucagon Dose: 1.0 mg/1.0 ml    Route: IM    Possible side effects: Nausea and Vomiting

**Blood Glucose Testing**
Target range for blood glucose (BG) is: 80-120
Check blood glucose: Before meals, prior to insulin correction, and before exercise if needed. Or per K███'s request. If symptomatic (See student's specific symptoms in Individualized Health Care Plan, IHCP)
If BG is less than 80, glucose source (smarties, sweet tarts, half a glucose tab) follow management per Diabetes Emergency Action Plan (page 2)
Student should not exercise if BG is below 80 or symptomatic.
'Free' Snacks (no insulin coverage) Per K███'s request

**Insulin Administration**
Insulin Type: Diluted Novolog (2:10 dilution) via Pre-Filled Syringe
                Novolin R (Regular) via Pre-Filled Syringe

Route: Subcutaneous   Possible side effects: Hypoglycemia

Lunch Dosing: 0.5 unit Diluted Novolog and 1 unit Novolin R before meal.

Correction Dose: Diluted Novolog
Blood Glucose 120-130 (0.5 unit)
Blood Glucose 130-140 (1 unit)
Blood Glucose 140-150 (1.5 unit)

**Additional Orders:**

The **Dexcom G6** is FDA approved for making treatment decisions. Correction doses of insulin for hyperglycemia, or the intake of carbohydrates for treating or preventing hypoglycemia can be determined at school based on the CGM if there is a glucose number and a directional arrow visible on the CGM. The "Urgent Low Soon Alert" signifies that a glucose of 55mg/dL will be reached within 20 minutes.  This should be treated based on the student's hypoglycemia treatment plan. If the symptoms of the student don't match the CGM reading, check a finger stick blood glucose with a meter.  In addition, the parent/guardian must sign below verifying they approve the school personnel or school nurse to treat hypoglycemia or give insulin doses based on the CGM.

_____ (Parent/Guardian Signature)


**TO BE COMPLETED BY PARENT OR GUARDIAN**
I understand that a school team, including parent or guardian, may make decisions about implementation and assistance in the school based on consideration of the above recommendations, available resources, and the student's level of self-management. I acknowledge that these orders signed by the LIP will be used by the school nurse, and shared with appropriate school staff, to develop and IHCP for my child's diabetes management at school.

Date:
Parent/Guardian Signature:

Best/Emergency contact information:
Name: Caly Watkins
Cell: 801-231-2855
Name: Wade Watkins
Cell: 801-450-3808
Name: Diane Ault
Cell: 801-694-5704

# **EXHIBIT E**

# Fabian VanCott

**JOAN M. ANDREWS**
**Attorney**
Direct Dial: 801-323-2263
Facsimile: 801-596-2814
jandrews@fabianvancott.com

December 21, 2018

**_VIA Email Only_**

Nate Cripps
Disability Law Center

**Re:     Follow Up re KW Diabetes Management Issues**

Dear Nate:

On behalf of Jordan School District, I believe we are close to being able to resolve the issues related to the management of K▂▂W▂▂'s diabetes.

After a great deal of deliberation and further investigation, I can communicate that the District is in fact willing to reconsider its position regarding the necessity of storing KW's pre-filled insulin syringes in a lockbox in his medical bag. Although the District remains concerned about the safety considerations that have previously been communicated, and continues to believe those concerns are both reasonable and significant, it is also willing to consider alternatives short of locked storage.

Therefore, as we previously discussed, the only real remaining hurdle has to do with the language of the DMMO. As I had communicated in our phone conversation last month, although Dr. Murray's DMMO of November 21, 2018 adequately addressed the issue of the pre-filled syringes, the otherwise stock language of the DMMO is inappropriate in a couple of respects. I have attached a pdf with my notations regarding the language issues that remain to be resolved. Most significantly, based upon the language of the DMMO it is not clear that Dr. Murray understands that there will be no individual health care plan in place for K▂▂ where the family has declined to sign the required paperwork authorizing the provision of nursing services. This means that the only involvement of the school as it relates to the medical management of K▂▂'s diabetes would be with respect to the possible administration of emergency glucagon as per 53G-9-504.

The current DMMO expressly mentions an individual health care plan. However, an individual health care plan and associated nursing services/oversight is provided only under the supervision of a school nurse. We do not want there to be any ambiguity in the DMMO – from the District's perspective, its sole purpose is to certify that K▂▂ is

215 South State Street, Suite 1200
Salt Lake City, UT 84111-2323
Tel: 801.531.8900  Fax: 801.596.2814
www.fabianvancott.com

entirely capable of self-managing, and that it is therefore medically appropriate for him to be in possession of diabetes medication (including the pre-filled syringes and emergency glucagon) at all times.

My suggestion would be that you or the family provide my mark-up of the November 21, 2018 DMMO to Dr. Murray, and that if necessary, we schedule a conference call with you, me, and Dr. Murray to address any questions/concerns she might have about the clarifications being requested by the District. Once that is clarified, the District would like the final DMMO to be signed in ink, and mailed by Dr. Murray's office directly to the District, and not just delivered electronically.

Finally, I do also want to clarify that it is the District's ongoing understanding that those pre-filled syringes will be appropriately labeled by the pharmacy to indicate what they are filled with, and that if diluted insulin is used it will be diluted by the pharmacy. Again, those are important safety considerations because if there were ever an issue or problem with the inadvertent administration of insulin to another child or staff, the District would need to know exactly what is in the syringes and that it was prepared under the supervision of a licensed pharmacist.

If you and I can work on these final pieces over the holidays and get the revised orders then we can schedule a 504 Team meeting right away upon the start of school in January. The current 504 contains quite a bit of language regarding the medical management and oversight provided by the school so it will need to be modified fairly extensively in order to be consistent with this understanding.

Sincerely,

/s/ Joan M. Andrews

Joan M. Andrews
*Counsel for Jordan School District*

Encl. (DMMO Mark-Up)

\* Final Report \*

Utah Department of Health/Utah Office of Education
Licensed Independent Provider's (LIP)
Diabetes Medication/Management Orders
In Accordance with Utah Code 53A-11-603 and 53A-11-604
PCH Outpatient Diabetes Program

> New statutory references:
> 53G-9-504 (administration of glucagon);
> 53G-9-506 (possession and self-administration of diabetes medication)

801-213-3599
Fax: 801-587-7539
Student Information
Patient First Name: K████
Patient Last Name: W████
Patient DOB: 03/03/2011
Type of DM: 1
Age at Dx: 17 months old

Name of School: Butterfield Canyon Elementary
School Fax:
For School Year: 2018-2019

To Be Completed by LIP
In accordance with these orders, an Individualized Health Care Plan (IHCP) must be developed by the School Nurse, Student, and Parent to be shared with appropriate school personnel, and cannot be shared with any individual outside of those public education employees without parental consent. As the student's LIP, I confirm Kraey has a diagnosis of diabetes mellitus and it is 'medically appropriate for the student to possess and self-administer diabetes medication and the student should be in possession of diabetes medications at all times' (Utah Code 53A-11-603 and 53A-11-604, section 2). Per my assessment, K████ is capable to carbohydrate count meals and snacks for insulin adjustment, carry, and self-administer diabetes medication( prefilled insulin syringes) . This student may participate in school activities with the following restrictions: Blood glucose is below 80 prior to PE/Recess.

> School will not be responsible for oversight.

> I understand that the student's parent/guar has declined to auth nursing services and student  will not recei services from, or oth be under the supervi a school nurse or oth school personnel as relates to the manag of student's diabetes.

PROCEDURES
Emergency Glucagon Administration
Immediately for severe hypoglycemia: unconscious, semi-conscious (unable to control airway), or seizing.
Glucagon Dose: 0.5 mg/0.5 ml Route: IM Possible side effects: Nausea and Vomiting

Blood Glucose Testing
Target range for blood glucose (BG) is: 80-120
K████ will independently check blood glucose as needed. (Before meals, prior to insulin correction, and before exercise). If BG is less than 80, he will treat himself.

> K████ will independently assess participation in PE/Recess based on blood glucose and will not participate if blood glucose is below 80 prior to PE/Recess.

Insulin Administration
Insulin Type: Diluted Novolog (2:10 dilution, prefilled syringe)
Novolin R (Regular, prefilled syringe)
Route: Subcutaneous Possible side effects: Hypoglycemia

Lunch Dosing: 0.5 unit Diluted Novolog and 1 unit Novolin R before meal (prefilled syringes).

Correction Dose: Diluted Novolog (prefilled syringe)
Blood Glucose 120-130 (0.5 unit)
Blood Glucose 130-140 (1 unit)
Blood Glucose 140-150 (1.5 unit)

Additional Orders:

The Dexcom G6 is FDA approved for making treatment decisions. Correction doses of insulin for hyperglycemia, or the intake of carbohydrates for treating or preventing hypoglycemia can be determined based on the CGM. The "Urgent Low Soon Alert" signifies that a glucose of 55mg/dL will be reached within 20 minutes. The parent/guardian must sign below verifying they approve of use of the G6 at school.

_____ (Parent/Guardian Signature)

TO BE COMPLETED BY PARENT OR GUARDIAN
I understand that a school team, including parent or guardian, may make decisions about implementation and assistance in the school based on consideration of the above recommendations, available resources, and the student's level of self-management. I acknowledge that these orders signed by the LIP will be used by the school nurse, and shared with appropriate school staff, to develop and IHCP for my child's diabetes management at school.

Date:
Parent/Guardian Signature:
Best/Emergency contact information:
Name: Caly Watkins
Cell: 801-231-2855
Name: Wade Watkins
Cell: 801-450-3808
Name: Diane Ault
Cell: 801-694-5704

> I acknowledge that these orders signed by the LIP will be shared with appropriate school staff in order to verify that my child is capable of self-managing his diabetes at school and does not require school nursing services.

Signature Line

Electronically Signed on 11/21/18 12:40 PM

_____
MURRAY, MD, MARY A.

| | |
|---|---|
| Result type: | School Records |
| Result date: | November 21, 2018 12:25 MST |
| Result status: | Auth (Verified) |
| Result title: | Free Text Note |
| Performed by: | MURRAY, MD, MARY A. on November 21, 2018 12:37 MST |
| Verified by: | MURRAY, MD, MARY A. on November 21, 2018 12:40 MST |
| Encounter info: | 1216077479, PDBE_Diabetes, Clinic, 11/21/18 - |

# EXHIBIT F

Diabetes Report
* Final Report *

W█████, K████████ - 563687720 

# * Final Report *

Utah Department of Health/Utah Office of Education
Licensed Independent Provider's (LIP)
Diabetes Medication/Management Orders
In Accordance with Utah Code 53G-9-506 and 53G-9-504
PCH Outpatient Diabetes Program

801-213-3599
Fax: 801-587-7539
Student Information
Patient First Name: K████
Patient Last Name: W███
Patient DOB: 03/03/2011
Type of DM: 1
Age at Dx: 17 months old

Name of School: Butterfield Canyon Elementary School
Fax: 801-302-4977
For School Year: 2018-2019

To Be Completed by LIP
In accordance with these orders, an Individualized Health Care Plan (IHCP) must be developed by the School Nurse, Student, and Parent to be shared with appropriate school personnel, and cannot be shared with any individual outside of those public education employees without parental consent. As the student's LIP, I confirm K████ has a diagnosis of diabetes mellitus and it is 'medically appropriate for the student to possess and self-administer diabetes medication and the student should be in possession of diabetes medications at all times' (Utah Code 53G-9-506). Per my assessment, K████ is capable to carbohydrate count meals and snacks for insulin adjustment, carry, and self-administer diabetes medication (prefilled insulin syringes) . This student may participate in school activities with the following restrictions: Blood glucose is below 80 prior to PE/Recess. Parents and K████ are responsible for oversight.

PROCEDURES

Emergency Glucagon Administration
Immediately for severe hypoglycemia: unconscious, semi-conscious (unable to control airway), or seizing. Glucagon Dose: 0.5 mg/0.5 ml Route: IM Possible side effects: Nausea and Vomiting

Blood Glucose Testing
Target range for blood glucose (BG) is: 80-120
K████ will independently check blood glucose as needed. (Before meals, prior to insulin correction, and before exercise). If BG is less than 80, he will treat himself.
Parents and K████ will assess participation in PE/Recess based on blood glucose reading.

Insulin Administration

| | |
|---|---|
| Result type: | Diabetes Report |
| Result date: | January 24, 2019 17:07 MST |
| Result status: | Auth (Verified) |
| Result title: | DMMO |
| Performed by: | NEARY, RD, ALAINA I on January 24, 2019 17:13 MST |
| Verified by: | NEARY, RD, ALAINA I on January 24, 2019 17:13 MST |
| Encounter Info: | 1216077479, PDBE_Diabetes, Clinic, 11/21/18 - 11/21/18 |

Diabetes Report
* Final Report *

 W⬛⬛, K⬛⬛⬛ - 563687720

Insulin Type: Diluted Novolog (2:10 dilution, prefilled syringe) Novolin R (Regular, prefilled syringe)
Route: Subcutaneous Possible side effects: Hypoglycemia

Lunch Dosing: 0.5 unit Diluted Novolog and 1 unit Novolin R before meal (prefilled syringes).

Correction Dose: Diluted Novolog (prefilled syringe) B
lood Glucose 120-130 (0.5 unit)
Blood Glucose 130-140 (1 unit)
Blood Glucose 140-150 (1.5 unit)

Additional Orders: Per mom all G6 information removed

TO BE COMPLETED BY PARENT OR GUARDIAN

I understand that a school team, including parent or guardian, may make decisions about implementation and assistance in the school based on consideration of the above recommendations, available resources, and the student's level of self-management. I acknowledge that these orders signed by the LIP will be used by the school nurse, and shared with appropriate school staff, to develop and IHCP for my child's diabetes management at school.

Date:
Parent/Guardian Signature:
Best/Emergency contact information:
Name: Caly Watkins
Cell: 801-231-2855
Name: Wade Watkins
Cell: 801-450-3808 Name: Diane Ault
Cell: 801-694-5704

**Signature Line**
Electronically Signed on 01/24/19 05:13 PM

NEARY, RD, ALAINA I

MURRAY, MD, MARY A.

**Completed Action List:**
* Perform by NEARY, RD, ALAINA I on January 24, 2019 17:13 MST
* Sign by NEARY, RD, ALAINA I on January 24, 2019 17:13 MST
* VERIFY by NEARY, RD, ALAINA I on January 24, 2019 17:13 MST

Result type:        Diabetes Report
Result date:        January 24, 2019 17:07 MST
Result status:      Auth (Verified)
Result title:       DMMO
Performed by:       NEARY, RD, ALAINA I on January 24, 2019 17:13 MST
Verified by:        NEARY, RD, ALAINA I on January 24, 2019 17:13 MST
Encounter info:     1216077479, PDBE_Diabetes, Clinic, 11/21/18 - 11/21/18

Printed by: NEARY, RD, ALAINA I
Printed on: 01/24/2019 17:14 MST